IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ECLIPSE LIQUIDITY, INC. § | | |
| Plaintiff, § | | G-13-cv-_____ |
| § | | |
| v. § | | ADMIRALTY |
| § | | |
| AVOR NAVIGATION LTD.; BARBAROS § | | |
| MARITIME, LTD; GEDEN HOLDINGS, § | | |
| LTD; and GENEL DENIZCILIK NAKLIYATI § | | |
| A.S., § | | |
| Defendants. § | | |

## ORIGINAL VERIFIED COMPLAINT

Plaintiff, ECLIPSE LIQUIDITY, INC.., by and through undersigned counsel, for its Original Verified Complaint against Defendants: AVOR NAVIGATION LTD.; BARBAROS MARITIME, LTD; GEDEN HOLDINGS, LTD; and GENEL DENIZCILIK A.S. alleges and pleads as follows:

### I. JURISDICTION, VENUE AND PARTIES

1.     This is an admiralty and maritime claim within the meaning of rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contracts *i.e.* an executed bareboat charter party for the employment of a seagoing cargo vessel and a principal obligor's performance guarantee. This case also falls under this court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provision of Rule B of the Supplemental Rules For Certain Admiralty and Maritime Claims, and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration.

2.     At all times material hereto Plaintiff, ECLIPSE LIQUIDITY, INC. (hereinafter "ECLIPSE" or "Plaintiff"), was a corporation organized under the laws of the Republic of the

Marshall Islands and the registered owner of the Motor Tanker AVOR a crude oil tanker vessel registered in Malta.

3. At all times material hereto Defendant, AVOR NAVIGATION LTD. (hereinafter "NAVIGATION"), was and is a foreign company organized under the laws of Malta and the bareboat charterer of the AVOR under a bareboat charter party contract dated May 27, 2010 ("the bareboat charter"). *See* **EXHIBIT 1**, Declaration of Despoina Bacha (hereinafter "Bacha Decl."), at ¶¶ 9 & 14, and Annex 3 thereto, *a true and correct copy of the bareboat charter.*

4. At all times material hereto Defendant, BARBAROS MARITIME LTD. (hereinafter "BARBAROS") was, and is a corporate entity organized under the laws of a country other than the United States, and the registered owner of Motor Tanker POWER, a tanker vessel registered in Malta, with IMO No. 9472634 and international call sign 9HA2748.

5. At all times material hereto Defendant, GEDEN HOLDINGS LTD. (hereinafter "GEDEN") is a foreign company organized under the laws of Malta and the guarantor of the performance of AVOR under the bareboat charter (*See* Bacha Decl. at Annex 3) and also a joint and several principal obligor pursuant to its written performance guarantee dated May 27, 2010. *Id.*, at ¶11, and Annex 4 thereto, *a true and correct copy of the performance guarantee.*

6. At all times material hereto Defendant GENEL DENIZCILIK NAKLIYATI A.S. (hereinafter "GDAS") was and is a foreign corporate entity organized under the laws of Turkey and the Manager and ISM Manager of the AVOR and the POWER.

7. The jurisdiction of this Honorable Court is founded on the presence within the District of property of the Defendants that may be attached by process of maritime attachment and garnishment under the provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, as pled more fully in Section V of this Original Verified Complaint.

## II. THE SUBSTANTIVE CLAIMS

8.     Under a bareboat charter party dated May 27, 2010 (*See* Bacha Decl., at Annex 3), Plaintiff chartered its vessel AVOR for a period of five years plus or minus 30 days and a daily charter rate of U.S $ 12,900 to "Geden Holdings Limited, Malta or nominee always guaranteed by Geden Line." GEDEN is also a joint and several obligor of Plaintiff under a performance guarantee dated May 27, 2010. *Id.,* at Annex 4.

9.     Plaintiff delivered the vessel into the bareboat chartered service under the charter and rendered (and continues to render), the contractual performance required of it. However, Defendants NAVIGATION and GEDEN, (hereinafter collectively referred to as "Charterers"), failed and refused to perform their obligations under the bareboat charter party contract and are in default and indebted to Plaintiff for various sums, which are due and owing, as set out below.

10.    Charterers failed and refused to pay bareboat charter hire, which was duly invoiced, (*See* Bacha Decl., at ¶17, and Annex 11 thereto), and under the terms of the bareboat charter is payable monthly in advance, for the month of May 2013 in the amount of $ 279,930; and for the month of June in the amount of $ 270,900. Charterers are, accordingly, in default of their obligation to pay charter hire in the amount of $ 550,830.

11.    Plaintiff, through its London solicitors, made due demand of GEDEN as guarantor and principal obligor under its guarantee dated May 27, 2010 for the payment of the outstanding amount of $ 550,830. *See* Bacha Decl., at ¶18, and Annex 13 thereto.

12.    The Charterers continue to employ the AVOR under charter to third parties and continue to realize earnings from her employment but are unjustly failing and refusing to pay Plaintiff the amounts they owe under the bareboat charter.

13. The actual amount of hire owed by Charterers to Plaintiff is considerably more substantial than the amount of the withheld bareboat charter hire of $ 550,830 payable for the months of May and June 2013, since the said amount represents a reduction below the agreed daily rate by $ 3,870 per day.

14. On January 31, 2013, at the request of GEDEN; ECLIPSE agreed to an arrangement whereby for a term commencing on December 1, 2012 and ending on December 1, 2013, the daily bareboat charter hire would be reduced by $ 3,870 and the payment of this amount which totals $ 1,412,550 would be deferred and repaid in proportionally equal installments (of $ 2,260 daily) added to the daily hire (after December 2013) through August 18, 2015. A charter party addendum (No. 1) containing these terms was made and was signed by the respective parties' representatives. *See* Bacha Decl., at ¶16, and Annex 10, thereto, a copy of the said bareboat charter party addendum.

15. In consequence whereof the amount actually owed to Plaintiff in respect of the months of May and June 2013, without the deferral of the sum of $ 3,870 is: 61 Days (May 1, 2013 through June 30. 2013) x 3,870 = $ 236,070 plus the invoiced amount of $ 550,830, totaling $ 786,900 due and owing (since timely payment of the hire is a condition of granting Charterers the benefit of the deferral).

### III. UNDERLYING PROCEEDINGS ON THE MERITS

16. Box 35 and clause 30(a) of the bareboat charter party (Bacha Decl. at Annex 3) provide for arbitration of all disputes arising out of the contract in London; and the letter of guarantee (*Id.,* at Annex 4) provides: "This guarantee shall be governed by and construed in accordance with the laws of England and we agree to the non-exclusive jurisdiction of the English High Court." Plaintiff intends to claim the full outstanding amount in London

arbitration which was commenced on June 13, 2013 (*see* Bacha Decl. Annex 12), and also intends to commence proceedings in the High Court in London to enforce the guarantee of GEDEN. Plaintiff estimates the legal costs that will be incurred to pursue these claims in London maritime arbitration and adjudication proceedings will be approximately $ 200,000. As it is customary in London arbitration and litigation, legal costs, including lawyers' fees are awarded to the prevailing party.

17. This action is an ancillary proceeding, brought in order to obtain jurisdiction over Charterers and to obtain security for Plaintiff's claims in the London proceedings.

## IV. DEFENDANTS' CORPORATE IDENTITY

18. Notwithstanding their formal separate incorporation, the Defendants are in actual fact a single business enterprise pursuing functionally differentiated business objectives through nominally separate business structures but always subject to the command and control of Defendants GEDEN and GDSA which are the parent companies of Defendants NAVIGATION and BARBAROS, as is more specifically pled hereunder and discussed in **EXHIBIT 1**, the Bacha Decl. filed in support of this Original Verified Complaint.

19. Defendant GEDEN was and is the owner and operator for profit of a fleet of tanker and dry cargo vessels and also the operator for profit of non-owned chartered-in ships. *See* Bacha Decl., at ¶ 5 and Annex 1 thereto at p. 40, a true and correct copy of the GEDEN prospectus. The fleet of vessels owned by GEDEN includes, among others, the Motor Tanker POWER, (*Id.*, Annex 1 at pp. 77, 85, 86; and Annex 2 at p 12) which is registered in the name of a single owning corporate entity – BARBAROS (*Id.*, Annex 1 at p. 77). BARBAROS is entirely owned by GEDEN. *Id.*, Annex 1 at p. 29.

20. In addition (or in the alternative) the M/T POWER and all other vessels of the

GEDEN fleet of tankers and dry cargo vessels are controlled by Defendant GDAS, (*Id.*, at ¶ 5, and Annex 1, p. 77; Annex 2, p. 2) which in turn is controlled by Cukurova Group, a leading Turkish conglomerate ultimately and beneficially owned by members of the Karamehmet family. *Id.*, Annex 1 at pp. 76-77.

21. GEDEN and GDAS publicly hold out the vessels they own through one-ship-companies, including the M/T POWER as their own assets. *Id.*, Annex 1 at p. 29, and Annex 2, generally.

22. Even though each vessel in the fleet of GEDEN/GDAS, which has not been chartered-in or leased-in from a third party, is registered in the name of an individual one-ship-company, referred to by the said defendants as an "SPV" *i.e.* a "special purpose vehicle" (Bacha Decl. at ¶ 7), GEDEN, which owns each SPV entirely, operates jointly with GDAS these vessels as assets of a single business enterprise. The purported corporate independence of the respective "SPV" vessel owners is simply fictitious, as they are entirely subjugated to GEDEN's and GDAS's business goals and policies, which are implemented by GEDEN/GDAS management and staff.

23. In this process the GEDEN/GDAS SPV's are mere limbs and organs of a larger corporate organism as evidenced by the common business strategy GEDEN/GDAS have pursued in order to cope with the current shipping market crisis (*see* Bacha Decl. at Annex 2 generally), and their common and shared -unsuccessful- attempt to spin off an initial public offering in which the assets of the "subsidiaries" were identified as assets of the GEDEN/GDAS group. *Id.*, at ¶ 7 and Annex 1, p. 40.

24. According to the information publicly disclosed by GEDEN, BARBAROS which owns the M/T POWER is owned by GEDEN. *Id.*, at ¶ 8, and Annex 1 at p. 29.

25. Throughout the portion of the bareboat charter term that was already performed, Avor Navigation Ltd., of Malta, remained as spelled out in the charter a "nominee" (*See* Bacha Decl., Annex 3, *a true and correct working copy of the bareboat charter party* at p. 2 (box 4)) fulfilling a merely nominal role with all of Plaintiff's business under the charter actually being transacted with GDAS as the management company of GEDEN carrying out all operating functions on behalf of GEDEN and Avor Navigation Ltd.

26. Defendants GEDEN, GDAS, and NAVIGATION have common officers, common directors, and common parent companies, and common beneficial owners as follows: Mr. M. Bülent Ergin, is director of GEDEN, GDAS, and Çukurova Holding A.S; Mr. A. Tugrul Tokhöz is on the board of directors of GEDEN, GDAS, and Çukurova Holding A.S; Mr. Mehmet Mat is the chief financial officer of GEDEN and GDAS (*See* Bacha Decl., Annex 1 at pp. 100-101). The ownership of GEDEN; GDAS; and Cukurova Holding AS is entirely in the hands of the Karamehmet family in Turkey. *Id*., Annex 1 at pp. 5, 76-77; 151.

27. Though holding itself out as a Maltese company with a business address at 85 St. John's Street, Valletta, Malta; GEDEN is not actually operating in Malta but is in fact operating by and through GDAS a/k/a Geden Lines whose business address "Buyukdere Caddesi, Yapi Kredi Plaza A Blok K-12, Leventi-Istanbul- Turkey" and telephone numbers GEDEN lists as its own. *See* Bacha Decl., Annex 4 a true and correct copy of the performance guarantee of GEDEN; see also Annex 5, copy of page styled "Contacts" from the website of Geden Lines. Thus all of the Defendants share a common business address, as they share also common officers, directors and beneficial owners.

28. According to the shipping data base EQUASIS, the M/T POWER though owned by Defendant BARBAROS, the manager of the vessel is GDAS. *See* Bacha Decl., Annex 6.

GDAS also holds the International Safety Management Code Document of Compliance for the M/T POWER (*Id.*, at Annex 7, *a true and correct copy of the certifying classification society on-line record*); and also holds the certificate of financial responsibility (COFR) for the same vessel. *Id.*, Annex 8, *a true and correct copy of the online COFR record for the M/T POWER*. GDAS is the corporate entity that, as the insured member, has entered the M/T POWER for P&I risks with Steamship Mutual Underwriting Association Ltd. as it is clear from the certification of the entry of this vessel which is available online. (*Id.*, at Annex 9, a true and correct copy of the certification of Steamship Mutual). Thus all Defendants share common departments, staff, and operating functions.

29. GEDEN and GDAS deal with the vessels of the one-ship-companies that form the Geden group as if they were assets directly owned by GEDEN or GDAS. They have generated and presented to the investing public and to their financing banks consolidated financial statements reflecting the pursuit of a single business enterprise carried on by them with the tonnage of their subsidiary SPV one-ship-companies, (*See e.g*., Bacha Decl., Annex 1 at pp. 11-14, 112; Annex 2, generally); and have asserted their ability and maintain their right to sell or otherwise dispose of the assets of the one ship companies SPV's as their own property. *Id.*, Annex 1 at p. 5.

30. Beginning in March 2013 and continuing in subsequent months, Charterers' hire payments to Plaintiff and to other vessel owners who had similar bareboat chartering arrangements became erratic and increasingly late.

31. By making diligent enquiries in the shipping market and closely following the performance of the Geden Group Plaintiff has learned that GEDEN is attempting to radically change the corporate ownership structure of its shipping business in a manner likely to involve

8

wholesale repudiation of charterparties and shifting of assets that would severely compromise its ability to honor its obligations under the performance guarantee and similarly the ability of its wholly owned subsidiaries', including the ability of NAVIGATION to honor charter party hire payment commitments. *See* Bacha Decl., ¶¶ 18-25.

32. More specifically the record in a civil action recently filed in the United States District Court for the Southern District of Texas disclosed a document authored by business consultants of GEDEN and GDSA (*see* Bacha Decl., Annex 2) which outlines a restructuring plan that, among other things, would:

- A. Expropriate GEDEN of its shipping assets (vessels) by shifting its subsidiaries that own vessels "into appropriate newcos" (new corporate entities) for the purpose of making the assets unreachable by creditors to whom GEDEN and respective subsidiaries have undertaken important contractual obligations, a process that GEDEN and its consultants have characterized as "Ring-fence potential sources of disruption, holdouts, or nuisance (such as arrests or sister-ship arrests)." *Id.*, at p. 7.

- B. Establish the successor corporate entities ("newcos") of GEDEN with such a shareholding structure as to minimize the risk of the assets being arrested under process of law by unpaid creditors. *Id.*, at p. 40.

- C. Relegate creditors who have extended non-financing credit to the GEDEN group of companies to a "Group D" status outside the "privileged" creditors of the "newco" groups. Such creditors include Plaintiff and other owners within the Stealth group who have bareboat chartered vessels to the Geden Group. *Id.*, at p. 7.

9

33. GEDEN in conjunction with its group of subsidiaries has already implemented its "restructuring plan" by large scale defaults on the obligations it owes to the creditors that it has relegated to its restructuring "Group D" and is already in serious default to Icon Amazing, LLC to which it is indebted in excess of U.S. $ 1,000,000; and to First Ship Lease (FSL) of Singapore to which it owes substantial sums of unpaid lease money; and has defaulted on its obligations to the Stealth Group vessel owners being entirely in default in its May and June 2013 installments of bareboat charter hire to: Plaintiff ECLIPSE as noted in the foregoing; Tank Punk Inc. in respect of its bareboat charter party of the M/T SPIKE of 26 March 2010; to Ai Giorgis Oil Trading Limited in respect of its February 23, 2010 charter party of the M/T CS STEALTH; and to Psara Energy Limited in respect of its February 23, 2010 charter party of the M/T CV STEALTH, with the total amounts in default exceeding U.S. $ 2,000,000. *See* Bacha Decl., at ¶¶ 23-24.

34. In restructuring the corporate ownership of its valuable assets and "ringfencing" them for the express purpose of making them inaccessible as a source of recourse to creditors to whom GEDEN and its wholly owned subsidiaries are indebted, GEDEN and its co-defendants are in the process of actively abusing the corporate form for the express wrongful purpose of defeating legitimate claims of creditors whose assets GEDEN and its co-defendants have used to enrich themselves.

35. The M/T POWER is one of the assets which is beneficially owned by Defendant GEDEN and/or by its co-defendant GDAS, that the said Defendants are seeking to "ringfence" in order to prevent creditors such as Plaintiff from attaching as a source of security.

36. By reason of the relationship of complete dominion and control that Defendants GEDEN and GDAS have exercised over their subsidiaries BARBAROS and NAVIGATION,

taking into consideration the foregoing facts and circumstances, it would be just, equitable and proper for the Court to exercise its equitable powers to pierce the corporate veil of BARBAROS as an alter ego of GEDEN and GDAS so that it may be attached with process of maritime attachment and garnishment as a source of security for Plaintiff's unpaid May and June 2013 unpaid hire installments.

### V. APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

37.     None of the Defendants are present or can be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See Attorney Declaration of George Gaitas attached hereto as* **EXHIBIT 2**. Nevertheless, Defendants have within the District tangible or intangible personal property in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, or effects.

38.     More particularly the M/T POWER, bearing IMO No. 9472634 and international call sign 9HA2748, a tanker vessel owned by Defendants, is or will soon be within the Port of Freeport Texas, and is expected to berth at Enterprise Causeway berth within the Southern District of Texas.

39.     Defendants GEDEN and GDAS, used and are continuing to use their corporate separateness, and the purported separate incorporation of their surrogate subsidiaries NAVIGATION and BARBAROS abusively, to wit: to engage in fraudulent corporate restructuring and asset allocation practices to avoid paying agreed and accrued hire, for the M/T AVOR and to repudiate with impunity their obligations under the bareboat charter party.

40.     Defendants have contracted with Plaintiff using their completely dominated surrogate shell entities NAVIGATION and BARBAROS as alter egos, intending to reap the

benefits but pay none of the costs.  Defendants are accordingly, using the corporate form abusively, *i.e*. to perpetrate fraud and commit other injustice.  It would be, accordingly, fair and equitable to pierce or reversely pierce the corporate veil of GEDEN; GDAS, NAVIGATION; and BARBAROS in order to reach the economic value of the M/T POWER  which said Defendants have compartmentalized in separate corporate pockets, to the detriment of  Plaintiff.

41.	Alternatively, Defendants having operated, at all relevant times, as a single enterprise, and being the *alter ego* of each other in the circumstances set in the above and foregoing Original Verified Complaint, it would be fair and equitable for any asset of this enterprise to be subject to the claims of judgment creditors of the enterprise, such as Plaintiff, and for any such assets to be attached as security for Plaintiff's maritime claims.

42.	Plaintiff has maritime claims against the Defendants arising out of maritime contract (*i.e*. – the bareboat charter party with GEDEN and NAVIGATION dated May 27, 2010 and the performance guarantee of GEDEN of the same date).

43.	The amount of Plaintiff's claim as reasonably as it can be estimated is as follows:

	A. Charter Hire due and owing ……………………………$       786,900.00

	B. Interest at 6% compounded quarterly for 1 year…………$         48,287.00

	C. Recoverable Legal Fees and Costs………………………$       200,000.00

	**Total Claim………………………………………………$     1,035,187.00.**

44.	Therefore, Plaintiff's total claim for breach of the maritime contracts against Defendants is in the aggregate sum of **USD 1,035,187.00.**

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A.      That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Original Verified Complaint;

B.      That since the Defendants cannot be found within this District pursuant to Supplemental Rule B, all of the assets of the Defendants presently within this District, or assets expected in this District during the pendency of this action, including, but not limited to, the M/T POWER and/or any assets within the possession, custody or control of any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served, be attached and garnished in an amount sufficient to answer Plaintiff's claim;

C.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

D.      That judgment be entered against each of the Defendants in the sum of One Million Thirty-Five Thousand, One Hundred Eighty-Seven Dollars (**$1,035,187.00**), together with interest and costs, and the proceeds of the assets attached be applied in satisfaction thereof;

E.      That the Court grant such other and further relief as it deems, just, equitable and proper.

Respectfully Submitted,

Date:  June 27, 2013                          CHALOS & CO, P.C.
       Houston, TX

                              By:    /s/George A. Gaitas
                                     George A. Gaitas
                                     State Bar No. 24058885
                                     Federal Bar No. 705176
                                     Briton P. Sparkman (BS-5220)
                                     7210 Tickner Street
                                     Houston, Texas 77055
                                     Telephone: 713-936-2427
                                     Fax: 866-702-4577
                                     E-mail: gaitas@chaloslaw.com
                                             bsparkman@chaloslaw.com

                                     *Attorneys for Plaintiff*
                                     ECLIPSE LIQUIDITY, INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ECLIPSE LIQUIDITY, INC. § | | |
| Plaintiff, § | G :13-cv-_____ | |
| § | | |
| v. § | ADMIRALTY | |
| § | | |
| AVOR NAVIGATION LTD.; BARBAROS § | | |
| MARITIME, LTD; GEDEN HOLDINGS, § | | |
| LTD; and GENEL DENIZCILIK NAKLIYATI § | | |
| A.S., § | | |
| Defendants. § | | |

## VERIFICATION OF COMPLAINT

I, DESPOINA BACHA, pursuant to Section 1746 of Title 28 of the United States Code, hereby declare and say the following under penalty of perjury:

1. I am the lawful representative of the above captioned Plaintiff, ECLIPSE LIQUIDITY, INC., and I am duly authorized to make this Verification on its behalf.

2. I have read the above and foregoing Verified Complaint and the allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Signed in Athens, Greece
June 27, 2013

Despoina Bacha
Representative of ECLIPSE LIQUIDITY INC.

1